NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2010-3035

LORI E. VALDEZ,

Petitioner,

v.

DEPARTMENT OF THE NAVY,

Respondent.

Lori E. Valdez, of Portsmouth, Virginia, pro se.

Michael P. Goodman, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Brian M. Simkin, Assistant Director.

Appealed from: Merit Systems Protection Board

NOTE: This disposition is nonprecedential

# United States Court of Appeals for the Federal Circuit

2010-3035

LORI E. VALDEZ,

Petitioner,

v.

DEPARTMENT OF THE NAVY,

Respondent.

Petition for review of the Merit Systems Protection Board
in case no. DC0752090339-I-1.

———————————————

DECIDED: March 17, 2010

———————————————

Before NEWMAN, CLEVENGER and LINN, Circuit Judges.

PER CURIAM.

Lori E. Valdez seeks review of the final decision of the Merit Systems Protection Board ("Board") sustaining her removal for unauthorized use of a crime information database. Valdez v. Dep't of the Navy, No. DC0752090339-I-1 (Sept. 29, 2009). We affirm.

I

Ms. Valdez was employed by the Department of the Navy ("agency") in the Naval Criminal Investigative Service ("NCIS"), which is a federal law enforcement agency with the combined missions of providing law enforcement, counterintelligence, and security for Department of the Navy personnel and installations worldwide. Pursuant to an

agreement with the Federal Bureau of Investigation ("FBI"), NCIS has access to FBI criminal investigation databases, including the National Crime Information Center ("NCIC").

Ms. Valdez admits that on August 18, 2008, she misused her access to the NCIC database to run a criminal history inquiry on her husband for her personal benefit, not as a part of her official duties and without permission or authority from the agency. Her husband needed a clean criminal history record for a job application, and he needed a job to qualify for a mortgage on a home that would allow her ill father to move in. Ms. Valdez deemed it necessary to expedite this interrelated situation by unauthorized access to NCIC. When questioned about her conduct, she stated to her direct supervisor: "desperate times call for desperate measures." Her second line supervisor, Samuel G. Worth, initially recommended that, at a minimum, she be reprimanded and suspended for up to 14 days. Mr. Worth stated that "[g]iven her indifference to the standing policy in this instance, it is not a stretch to believe that she will again violate existing rules and guidelines when faced with another desperate personal situation." Mr. Worth subsequently reported to the deciding official in the case, Ronald Possanza, that he had lost confidence in Ms. Valdez and recommended her removal.

Mr. Possanza recommended removal as the penalty for the admitted wrongful access of the NCIC database. His proposal recited the admitted violation, the loss of faith in her by her superiors about her judgment and integrity, and the supervisor's belief that she would again violate rules when faced with another desperate personal situation.

In response to the notice of proposed removal, Ms. Valdez stated that she knew what she did was wrong and warranted punishment. She apologized and stated "[t]his will never happen again." She met with the deciding official to provide an oral reply, and at that time again stated that she would not repeat her action. She volunteered, towards the end of her meeting with the deciding official, that "the only thing that would sway her was her family. What would she do the next time her family was in danger— she didn't know—she couldn't say."

On February 5, 2009, Mr. Possanza issued his notice of removal. He found that Ms. Valdez had accessed the NCIC database without authorization for her own personal benefit. He explained his consideration of the <u>Douglas</u> factors, noting her previous service commendations and acceptable level of service, the stressful conditions under which she acted (noting that "stress does not excuse your conduct"), and the potentially serious effect on the agency's agreement with the FBI as a result of misuse of its database. He noted that her chain of command questioned her judgment, reliability and trustworthiness, and the loss of faith in her ability to exercise good judgment. Mr. Possanza emphasized Ms. Valdez's comment that she was not sure what she might do in a case of extreme family need. He concluded that "[y]our statements show that you are not a viable candidate for rehabilitation." He decided that there was no other place in the agency to which she could be assigned, and therefore that no other penalty but removal would be "adequate to address this matter."

Ms. Valdez appealed her removal to the Board. The Administrative Judge assigned to her case held a hearing at which Ms. Valdez testified, along with her first line supervisor, Mr. Worth, and Mr. Possanza. Ms. Valdez admitted that she had engaged in intentional misuse of government property (the formal charge against her). Assisted by counsel at the hearing, she argued that her punishment should be mitigated down from removal. Mr. Possanza agreed that many of the Douglas factors favored Ms. Valdez. He emphasized, however, that her violation had potentially jeopardized the agreement between the agency and the FBI, that she had lost the confidence of the chain of command, and that she had left open the possibility of committing the same kind of misconduct in the future. Mr. Possanza stated that his penalty of removal was reasonable in the circumstances of this case.

Ms. Valdez argued that her case should be treated similarly with another agency employee who had intentionally violated agency rules by leaving classified documents unattended. Removal had been proposed for the other employee, but the penalty was mitigated to reassignment and demotion when the deciding official in that case determined that the employee was a candidate for rehabilitation in another position.

The Administrative Judge noted that the Board does not second guess an agency's judgment with regard to the discipline of its employees. The Board's role is to assure that managerial judgment has been exercised within the tolerable limits of reasonableness, as tested by the deciding official's assessment of the Douglas factors. Because the deciding official, in his removal notice and testimony, carefully considered each of the Douglas factors, finding many in Ms. Valdez's favor, but importantly finding

her not to be a viable candidate for rehabilitation, the Administrative Judge concluded that the agency had justified the penalty of removal.

Ms. Valdez unsuccessfully sought review from the full Board, and timely petitioned for review in this court. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

III

Our review of the final decision of the Board is prescribed by statute. We may only upset a final Board decision if we determine that it is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. 5 U.S.C. § 7703(c).

In this case, the only question is whether the agency justified the penalty of removal. When an agency has improperly applied the Douglas factors in selecting a penalty, it has abused its discretion. "Determination of an appropriate penalty is a matter committed primarily to the sound discretion of the employing agency. This court defers to an agency's choice of penalty unless the penalty exceeds the range of permissible punishment . . . , or unless the penalty is so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion." Zingg v. Dep't of the Treasury, 388 F.3d 839, 843 (Fed. Cir. 2004) (quoting Brook v. Corrado, 999 F.2d 523, 528 (Fed. Cir. 1993)). See also DeWitt v. Dep't of the Navy, 747 F.2d 1442, 1445 (Fed. Cir. 1984) ("This court will not disturb the agency's choice unless the severity of its action appears totally unwarranted in the light of the relevant [Douglas] factors.")

Because many of the Douglas factors would support mitigation of the removal penalty, and in the light of the extreme family circumstances that prompted Ms. Valdez's action, we called for the full record in this case, including the recording of the hearing before the Administrative Judge.

We have carefully reviewed the entire record in light of Ms. Valdez's arguments to us that the agency misapplied the <u>Douglas</u> factors in refusing to mitigate her penalty. She argues that the agency's abuse of discretion should have been corrected by the Administrative Judge, whose decision became the final decision of the Board when it declined to review the case.

We see no error in the assessment of the record by the Board and find no basis to conclude that Ms. Valdez's removal is "totally unwarranted." We therefore affirm the final decision of the Board.

COSTS

No costs.